**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| In re | ) | Chapter 11 Proceedings |
| | ) | |
| **RYBEK DEVELOPMENTS, LLC,** | ) | Case No: 2:21-bk-07697-DPC |
| | ) | |
| Debtor. | ) | **UNDER ADVISEMENT ORDER RE CLAIMANTS' MOTION FOR RECONSIDERATION** |
| | ) | |
| | ) | (Not for Publication – Electronic Docketing ONLY)[1] |

Before this Court is the Motion ("Motion for Reconsideration")[2] of Sandra Williamson ("Williamson") and Manny Guyot ("Guyot") (collectively, "Claimants"). Rybek Developments, LLC ("Debtor") filed a Response ("Response")[3] and Claimants filed a Reply ("Reply").[4] On April 10, 2023, the Court held a hearing on the Motion for Reconsideration and took this matter under advisement. After considering the parties' briefs, oral arguments, relevant statutes, and case law, this Court now issues this Order denying Claimants' Motion for Reconsideration.

**I. FACTUAL BACKGROUND**

On March 26, 2013, Green Investments, LLC ("GI LLC"), a Michigan limited liability company, purchased property located at 1916 East Hayden Lane, Tempe, Arizona, 85281 ("Property").[5] Dennis Green ("Green") is the sole member of GI LLC.[6] After unsuccessful attempts to develop the Property, on April 4, 2014 GI LLC entered

---

[1] This decision sets forth the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. ("Rule") 7052.
[2] DE 135. "DE" references a docket entry in the bankruptcy case 2:21-bk-07697.
[3] DE 137.
[4] DE 140.
[5] DE 117, page 1-2
[6] DE 117, page 1.

into a Partnership Agreement ("Partnership Agreement") with the Claimants.[7] The partnership is a general partnership, which confusingly goes by the same name: Green Investments LLC ("Partnership").[8] The Partnership Agreement called for the Claimants to invest $150,000 into the Partnership for the "Construction and Sale" of the Property.[9] Green ("Managing Partner") was designated as the managing partner.[10] The Partnership Agreement explicitly states that title to all Partnership property remains in the name of the Partnership and that no partner has any ownership interest in Partnership property.[11] GI LLC was to receive 50% of profits of the Partnership.[12] The Claimants were to receive the other 50% of the Partnership's profits.[13] The Partnership Agreement did not define "profits" or "partnership property."[14] It is disputed as to whether Partnership profits were ever realized or even whether the Property was an asset of the Partnership or was simply retained by GI LLC.

GI LLC granted a lien on the Property in favor of Capital Fund I, LLC ("Capital Fund I").[15] Capital Fund I, in turn, assigned that deed of trust to Capital Fund II LLC ("Capital Fund II").[16] The assignment of deed of trust was recorded in Maricopa County on February 27, 2015.[17] On February 23, 2016, the Property was sold by GI LLC to Debtor to avoid Capital Fund II's threatened foreclosure.[18] As a part of that sale, GI LLC retained a $215,000 deed of trust against the Property.[19] Subsequently, Debtor granted

---

[7] DE 117, page 2.
[8] DE 117-1, Exhibit C. Although the Partnership is named Green Investments LLC, it is not a limited liability company. It is a general partnership governed by the laws of the State of Michigan. DE 117, Exhibit 1-1, C.
[9] DE 117-1, Exhibit C.
[10] DE 117-1, Exhibit C.
[11] DE 117-1, Exhibit C.
[12] DE 117-1, Exhibit C.
[13] DE 117-1, Exhibit C.
[14] DE 117, page 3-4.
[15] DE 117-2, Exhibit E.
[16] DE 117-2, Exhibit F.
[17] DE 117-2, Exhibit F.
[18] DE 117, page 5.
[19] DE 117, page 5.

Sell Wholesale Funding, LLC ("Sell Wholesale") a deed of trust to secure a $250,000 loan to Debtor.[20] That loan was used to pay off Capital Fund II's lien.[21] GI LLC subordinated its lien on the Property to Sell Wholesale's lien.[22]

In March of 2017, Debtor fell behind on its obligations to Sell Wholesale.[23] Capital Lending Partners, LLC ("Capital Lending") agreed to loan Debtor money to pay off the Sell Wholesale loan, but only if GI LLC released its deed of trust against the Property.[24] GI LLC acquiesced and released its deed of trust on December 27, 2017,[25] at which point GI LLC retained only an unsecured claim against the Debtor in the amount of approximately $215,000.

Debtor filed for chapter 11 bankruptcy on October 13, 2021.[26] The Claimants filed proof of claims in the amount of $283,333.33 (Guyot's Proof of Claim) and $141,666.67 (Williamson's Proof of Claim).[27] The Debtor objected to the Guyot Proof of Claim[28] and the Williamson Proof of Claim.[29] The Claimants filed responses to those objections.[30] Those objections have not been resolved.

With this Court's approval the Debtor sold the Property on December 21, 2021, netting $72,336.74 to the estate after payment of closing costs and all encumbrances.[31]

---

[20] DE 117, page 5.
[21] DE 117, page 5.
[22] DE 117, page 5.
[23] DE 117, page 6.
[24] DE 117, page 6.
[25] DE 117, page 6.
[26] DE 1.
[27] DE 117, page 7.
[28] DE 44.
[29] DE 43.
[30] DE 46; DE 47.
[31] DE 117, page 8.

## II. PROCEDURAL BACKGROUND

On February 6, 2023, this Court held a hearing on Debtor's and Claimants' simultaneously filed motions for summary judgment.[32] The Claimants' motion argued for entry of judgment under a constructive trust theory and a state law fraudulent transfer theory.[33] The Debtor's motion argued that this Court did not have jurisdiction and that there was no constructive trust or fraudulent transfer.[34] The Court denied both motions finding material factual issues existed relating to Debtor's motion and standing issues and material factual disputes existed relating to Claimants' motion.[35]

## III. THE BRIEFS

### A. Claimants' Motion for Reconsideration

Claimants argue they have standing to pursue claims against the Debtor because, under their constructive trust theory, GI LLC was required to hold the deed of trust for the benefit of the Partnership.[36] Claimants contend GI LLC released its $215,000 deed of trust against the Property, thereby breaching its duty of loyalty to the Claimants.[37] Additionally, Claimants argue they have standing to assert their claims against their partner, GI LLC, under both Arizona law and Michigan law.[38] In addition to arguing Claimants have standing, Claimants insist that their previously denied summary judgment motion should be granted.[39]

---

[32] DE 116; DE 118.
[33] DE 118.
[34] DE 116.
[35] DE 131.
[36] DE 135, page 2.
[37] DE 135, page 4.
[38] DE 135, page 6-7.
[39] DE 135, page 1.

**B. Debtor's Response**

Debtor responds that Claimants are confusing the issue of standing to bring their claims against a third party and the issue of jurisdiction as to where a partner can bring a claim against another partner.[40] Debtor notes that Claimants contend the GI LLC deed of trust was held in trust for the Partnership, yet Claimants concede that any claim against their partner is to be determined under the Partnership Agreement.[41] The Partnership Agreement contains a forum selection clause submitting the partners to the jurisdiction of Michigan.[42] In any event, Debtor maintains that the Partnership itself is the party with standing to assert claims against Debtor, not the Claimants who are merely non-managing partners in the Partnership.[43]

Debtor contends that, even if this Court were to find that Claimants have standing to assert their claims against Debtor and even if this Court had the jurisdiction to hear the claims alleged under the Partnership Agreement, the underlying summary judgment motions were also denied for many factual reasons.[44] The factual issues still in dispute include determining who owned the Property, an accounting of the Partnership, and any alleged wrongdoing by GI LLC.[45]

**C. Claimants' Reply**

Claimants' argue that their failure to pursue GI LLC in Michigan does not preclude their ability to assert claims against the Debtor.[46] Claimants conclude they have standing because Debtor admits Claimants have claims against GI LLC and it is not necessary for Claimants to first reduce such a claim to judgment under the Arizona

---

[40] DE 137, page 2.
[41] DE 137, page 2
[42] DE 137, page 2-3.
[43] DE 137, page 3.
[44] DE 137, page 4.
[45] DE 137, page 7-8.
[46] DE 140, page 2.

Fraudulent Transfer Act ("AFTA").[47] Next, Claimants maintain that a constructive trust claim may be imposed against the transferee of an improperly transferred asset, not necessarily the transferor of the improperly transferred asset.[48] To bolster this claim, Claimants rely on *Turley v. Ethington*[49] to support the proposition that individual partners have standing to assert a constructive trust claim.

## IV. JURISDICTION

This Court has jurisdiction over this case and these issues pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B), (H), (K), and (O).

## V. ISSUES

Whether non-managing partners in a general partnership have standing to pursue the Partnership's claims against the Debtor under Michigan partnership law and whether genuine and material factual issues prevent entry of summary judgment in this contested matter.

## VI. DISCUSSION

Claimants seek this Court's reconsideration of the denial of their motion for summary judgment. "Bankruptcy Rule 9023 authorizes a party to move for the reconsideration of a bankruptcy court's decision."[50] "Reconsideration is granted to permit a court to correct 'an error in interpreting the facts or the law or when there has been a significant change in the law or facts since submission of the issue to the court.'"[51]

Claimants contend this Court erred in determining they did not have standing to recover from Debtor on their two theories: (1) a fraudulent transfer theory; and (2) a constructive trust theory. Claimants' standing to pursue each theory will be addressed after the applicable law is recounted.

---

[47] DE 140, page 4.
[48] DE 140, page 4.
[49] *Turley v. Ethington*, 213 Ariz. 640 (Ariz. Ct. App. 2006).
[50] *In re Interstate Cigar Co., Inc.*, 285 B.R. 789, 794 (Bankr. E.D.N.Y. 2002).
[51] *Id.* (citing *Sundial Asphalt Co., Inc. v. V.P.C. Investors Corp.*, 147 B.R. 72, 84 (E.D.N.Y. 1992).

**A. Applicable Law**

A partnership is governed by the state laws in which it is domiciled, absent a choice-of-law clause.[52] If a partner seeks to enforce its rights under its partnership agreement, the state law of that partnership agreement applies. The Partnership Agreement contains a choice-of-law provision that states the Partnership is formed "in accordance with the laws of the State of Michigan. The rights and obligations of the Partners will be as stated in the applicable legislation of the State of Michigan… except as otherwise provided here." Accordingly, any issues that arise out of the Partnership Agreement or any claims the Claimants hold to enforce their rights under the Partnership Agreement are to be governed by Michigan law, specifically the Michigan Uniform Partnership Act.

Under the AFTA, a transfer is fraudulent as to a creditor if the transfer was made (1) "with actual intent to hinder, delay, or defraud any creditor of the debtor" or (2) "without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either: (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or (b) "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."[53] A creditor is defined as "a person who has a claim."[54] A claim is defined as "a right to payment, whether or not the right is reduced to judgment[.]"[55]

The parties seem to agree that the AFTA would apply here under an appropriate fraudulent transfer cause of action. This Court agrees. Debtor/transferee is an Arizona limited liability company, the Property is in Arizona, and the transfers occurred in

---

[52] J. William Callison & Maureen A. Sullivan, *Partnership Law and Practice: General and Limited Partnerships*, § 1:1 (2022—2023 ed. 2022).
[53] A.R.S. § 44-1004(A).
[54] A.R.S. § 44-1001(3).
[55] A.R.S. § 44-1001(2).

Arizona. Even though the AFTA is the correct fraudulent transfer law applicable here, the Claimants still must have standing under Michigan partnership law to assert the fraudulent transfer cause of action.

**B. Standing Under Michigan Partnership Law**

Because the Partnership Agreement explicitly states it is governed by Michigan law,[56] this Court must turn to Michigan partnership law to determine whether the Claimants, in their individual capacity as non-managing general partners, have standing to sue the Debtor, a party who is not their partner and with whom the Claimants were not involved.

Under the Michigan Uniform Partnership Act, "[t]he property rights of a partner are (1) his rights in specific partnership property, (2) his interest in the partnership, and (3) his right to participate in the management."[57] "Specific partnership property" is not defined in the Michigan Uniform Partnership Act.[58]

    1. <u>M.C.L.A. § 449.24(1)</u>

The use of the word "specific" in M.C.L.A § 449.24(1) suggests that a general partner does not automatically have rights in all partnership assets, but only might hold ownership rights to specific partnership property. In other words, this statute recognizes a scenario where a partner could jointly hold, with the partnership, rights in one or more partnership assets. Here, the Claimants do not have any rights in the underlying assets of the Partnership, unless a specific asset is jointly owned by the Partnership and the partner. Notably, however, the Partnership Agreement forbids such joint ownership:

---

[56] DE 117, Ex. 1-1, page 20. ("By this Agreement the Partners enter into a general partnership (the "Partnership") in accordance with the laws of the State of Michigan.")
[57] M.C.L.A. § 449.24.
[58] The Michigan Uniform Partnership Act maintains the tenancy-in-partnership concept that was eliminated by the Revised Uniform Partnership Act. J. William Callison & Maureen A. Sullivan, *Partnership Law and Practice: General and Limited Partnerships*, § 7:12 (2022—2023 ed. 2022).

> Title to all Partnership Property will remain in the name of the Partnership. No Partner or group of partners will have any ownership interest in such Partnership Property in whole or in part.[59]

Notwithstanding the possibility that a partner could jointly own specific partnership property under Michigan partnership law, here the Partnership's partners have all mutually agreed that no partner will have any ownership interest in any of the Partnership's property. The Partnership alone owns all its property. If the Partnership owns a cause of action against the Debtor, the Partnership alone has standing to assert that cause of action.

### 2. M.C.L.A. § 449.24(2)

Next, M.C.L.A § 449.24(2) indicates a partner's interest in a partnership itself is a property right of that partner. In a corporate setting, that ownership would be called equity. The Claimants' interest in the Partnership is effectively just an equity interest. That equity interest does not confer upon the Claimants standing to sue Debtor on an alleged claim that is a claim of the Partnership.

### 3. M.C.L.A. § 449.24(3)

M.C.L.A § 449.24(3) indicates a partner's right to participate in management of the Partnership is a property right. The Partnership Agreement states that "[a]ll the Partners will be consulted and the advice and opinions of the Partners will be obtained as much as is practicable. However, the Managing Partner [Green] will have management and control of the day-to-day business of the Partnership for the purposes stated in this Agreement."[60] As the Managing Partner, Green may have standing to sue on behalf of the Partnership to avoid an allegedly fraudulent transfer to Debtor. However, under Michigan partnership law, absent an order from a court with jurisdiction over the affairs of the Partnership, the Claimants do not have standing to sue Debtor on a cause of action belonging to the Partnership. This Court has not been asked to confer upon the Claimants

---

[59] DE 117-1, Exhibit C.
[60] DE 117-1, Exhibit C.

the right to act on behalf of the Partnership, nor does this Court presume it would have the jurisdiction to do so.

**C. Genuine Issues of Material Fact Preclude Entry of Summary Judgment**

1. <u>Title to the Property</u>

There is a genuine issue of material fact as to whether the subject Property was ever Partnership property. At all relevant times, the Property was titled to GI LLC, not the Partnership. Although the Partnership shared the name "Green Investments LLC" with GI LLC, all of the following documents reflect the Property title as being held by "Green Investments LLC, a Michigan limited liability company" and not Green Investment LLC, a Michigan partnership: (1) the warranty deed from GI LLC's initial purchase of the Property; (2) Capital Fund II's notice of trustee's sale; (3) the deed of trust between GI LLC and Capital Fund I; and (4) the special warranty deed conveying the Property to Debtor.[61] Further, the Partnership Agreement does not suggest the Property was to be contributed to the Partnership by its partner GI LLC, even though a list of partner capital contributions, in the form of "cash or property," is provided for on page two of the Partnership Agreement.[62] If the Property was never owned by the Partnership, the Partnership could not have transferred the Property. There is a genuine issue of material fact concerning ownership of the Property.

2. <u>Partnership Profits</u>

M.C.L.A § 449.26 defines a partner's interest in a partnership as his share of the profits and surplus. "Profits," however, are not defined in the Partnership Agreement, nor are they defined in the Michigan statute. There is a genuine issue of material fact as to the profits of the Partnership, if any. An accounting would likely need to be done to determine such amount. The Claimants may have a right to an accounting of the

---

[61] DE 117-1; DE 117-2; DE 117-3.
[62] DE 117-1, Exhibit C.

Partnership's property, but Debtor is certainly not a proper party to such an accounting demand.

Claimants argue that GI LLC was required to "hold as trustee for [the Partnership] any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property."[63] The Claimants must first prove that either the $215,000 deed of trust or the Property itself was property of the Partnership. This fact is hotly contested by the parties. But even if the $215,000 deed of trust was a Partnership asset, only a court with jurisdiction over the affairs of the Partnership could require the Partnership's assets to be held in trust for the Claimants.

### 3. Fraudulent Transfer Cause of Action

There is a genuine issue of material fact as to whether the Claimants fall within the definition of "creditors" under the AFTA with respect to the Partnership. The Claimants are more akin to equity holders than creditors of the Partnership. Further, the Claimants' right to payment may be against GI LLC or the Partnership but not against the Debtor.

This Court is not finding that a fraudulent transfer cause of action against Debtor does not exist. However, if there is a valid fraudulent transfer cause of action here, it is the Partnership (or perhaps the Partnership's Managing Partner [Green]) that must bring that cause of action if it was the Partnership's asset that was transferred. This Court does not have jurisdiction to order the Partnership to bring a cause of action. Given the forum selection clause in the Partnership Agreement, it appears Michigan may well be the correct court to address this question.

---

[63] M.C.L.A. § 449.21; DE 135, page 3.

### 4. Constructive Trust Theory

The Claimants also request the imposition of a constructive trust. Since the parties and this Court agree the AFTA would apply to the allegedly fraudulent transfer here, Arizona's law on constructive trust is implicated. "A constructive trust is a flexible, equitable remedy that a court may shape and impose in a variety of circumstances, especially situations where conscience demands."[64] A constructive trust "is a remedial device, used whenever title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress,"[65] or a breach of a fiduciary duty.[66] Imposition of a constructive trust first requires establishing a party is liable under one of the above causes of action.

Although Claimants repeatedly assert that they have "standing to pursue Debtor on a constructive trust claim[,]"[67] imposing a constructive trust is not a claim at all—it is an equitable remedy. Claimants must first assert a viable cause of action and they must have standing to pursue that cause of action before a court may impose the remedy of a constructive trust.

Claimants heavily rely on *Turley* to support their position that they have standing under a constructive trust theory. In *Turley*, Turley and Ethington orally agreed to enter into a partnership to buy 200 acres of land.[68] Ethington took title to the 200-acre parcel and orally assured Turley that he would honor their 50-50 partnership arrangement.[69] Later, Ethington refused to acknowledge the oral partnership so Turley sued for breach of fiduciary duty, fraud, breach of the duty of good faith and fair dealing, and unjust

---

[64] *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, ¶ 107 (Ariz. Ct. App. 2012).
[65] *Harmon v. Harmon*, 126 Ariz. 242, 244 (Ariz. Ct. App. 1980)
[66] *Turley*, 213 Ariz. at 643.
[67] DE 140, page 4.
[68] *Turley*, 213 Ariz. at 642.
[69] *Id.*

enrichment.[70] Turley sought the imposition of a constructive trust.[71] On appeal of the trial court's dismissal order, the court of appeals held the imposition of a constructive trust was not barred by the statute of frauds. The court of appeals found that Turley pled sufficient facts to show Ethington "breached the fiduciary duty he owed to Turley under the partnership agreement."[72] The court of appeals went on to note that "[b]ased on the facts alleged in the complaint, the Turleys have stated a cause of action under which the doctrine of constructive trusts might apply."[73]

*Turley* is not on point. First, *Turley* addresses whether the imposition of a constructive trust was barred by the statute of frauds. The statute of fraud is not at issue in the case at hand. *Turley* also undermines Claimants' insistence that a constructive trust theory is a cause of action. The underlying cause of action contemplated in *Turley* was a breach of fiduciary duty, among others. Turley's demand that the court impose a constructive trust was simply a remedy supporting Turley's alleged cause of action. More importantly, *Turley* is not a case concerning standing. The court in *Turley* held that Turley had alleged sufficient facts to support a cause of action "under which the doctrine of constructive trusts might apply."[74] The *Turley* case does not even mention standing. If Claimants were entitled to seek imposition of a constructive trust, they could so only if Claimants first had standing to proceed with a cognizable cause of action.

Claimants mention fraud, breach of fiduciary duty, and misrepresentation (among other causes of action) that could be vehicles to impose a constructive trust. Of course, genuine issues of material fact remain as to whether there was a breach of a fiduciary duty or any fraud or misrepresentation was committed by Green or GI LLC. Again, any misdeeds by Green or GI LLC committed against the Claimants (as opposed to the

---

[70] *Id.*
[71] *Id.*
[72] *Id.* at 644.
[73] *Id.*
[74] *Id.*

Partnership itself) might be properly pursued in Michigan courts, but this Court does not have jurisdiction over such Partnership disputes.

## VII. CONCLUSION

Claimants' Motion for Reconsideration is denied. The Claimants do not have rights in the Partnership's assets, whether those Partnership assets are the subject Property, the Partnership's $215,000 deed of trust against the Property, or the Partnership's claims against Debtor. The Partnership Agreement explicitly forbids a partner from holding rights in Partnership property. Even if the Claimants had rights to pursue the Partnership's assets or claims that could give them standing to sue Debtor, genuine issues of material fact remain. Claimants' summary judgment motion is hereby denied.

This Court hereby sets a status hearing on this matter at the same time as the Debtor's attorney's First Fee Application[75] hearing on Tuesday, June 20, 2023 at 9:00 a.m.

**ORDERED
DATED AND SIGNED ABOVE.**

**To be Noticed through the BNC to:**
Interested Parties

---

[75] DE 144.